IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHAEL ANN BOLENBAUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-443-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Based on the Court's review of the record and the issues presented, the court **REVERSES** the Commissioner's decision and **REMANDS** the case for further proceedings consistent with this Memorandum Opinion.

### I. Procedural Background

Plaintiff's application for benefits was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 74-90). The Appeals Council denied Plaintiff's request for review, thus the ALJ's decision became the final decision of the Commissioner. (TR. 66-69). This judicial appeal followed.

## II. The Administrative Decision

The Commissioner followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since April 15, 2010, the alleged disability onset date. At step two, the ALJ determined Plaintiff has the following severe impairments: iron deficiency, degenerative joint disease of the bilateral knees and obesity. (TR. 76). At step three, the ALJ found Plaintiff's impairments do not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 77).

At step four, the ALJ found Plaintiff could perform past relevant work as a "billing clerk, title clerk, human resources clerk and telemarketer." (TR. 88). The ALJ further found Plaintiff has the residual functional capacity (RFC) to perform less than the full range of sedentary work as defined in 20 CFR § 404.1567(a). (TR. 77). She found that Plaintiff could occasionally lift and/or carry 10 pounds or frequently lift and/or carry less than 10 pounds, stand and/or walk for two hours in an eight-hour work day and sit for six hours in a workday. (TR. 77). The ALJ found Plaintiff cannot climb ladders, ropes or scaffolds, nor can she balance, but she can occasionally climb stairs and ramps, kneel, crouch, crawl and stoop. (TR. 77). The ALJ further found that because Plaintiff could perform her past relevant work, Social Security Ruling 82-61 directed a finding of "not disabled." (TR. 88). Accordingly, Plaintiff was found to be not disabled from April 15,

2010, the alleged onset date, through July 30, 2013, the date of the ALJ's decision. (TR. 89-90).

### III. Issues Presented

Plaintiff raises four issues on appeal. First, Plaintiff argues she was denied a fair and impartial hearing from the ALJ. Second, she contends the ALJ failed to follow the treating source/physician rule. Third, Plaintiff argues the ALJ erred in assessing her Residual Functional Capacity. Finally, she asserts the ALJ failed to properly evaluate her credibility.

### IV. Standard of Review

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

### V. Analysis

**A. Treating Physician's Opinion**

Plaintiff contends the ALJ erred in her analysis of the medical opinions and the weight they were given. Specifically, Plaintiff challenges the ALJ's reasoning for giving the opinion and findings of a treating physician, Dr. Bryan, "little weight" in determining Plaintiff's Residual Functional Capacity. Generally, an ALJ must give a treating physician's opinion controlling weight if it is both (1) "well-supported by medically

3

acceptable clinical and laboratory diagnostic techniques" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinion is not entitled to controlling weight, "'[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527.'" *Id.* (quoting SSR 96–2p, 1996 WL 374188, at *4). Those factors are: "'(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the [ALJ's] attention which tend to support or contradict the opinion.'" *Id.* at 1301 (internal quotations omitted).

After considering the requisite factors, the ALJ must "give good reasons" for the weight ultimately assigned to the opinion. *Id.*; 20 C.F.R. § 404.1527(d)(2). "[I]f the [ALJ] rejects the opinion completely, he must ... give specific, legitimate reasons for doing so." *Id*. An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

4

In his assessment, Dr. Bryan concluded Plaintiff would be absent from work more than three times per month and would require additional unscheduled breaks. (TR. 87, 915).[1] The ALJ acknowledged in her decision that Dr. Bryan treats Plaintiff for her "gastrointestinal issues, vomiting, nausea, and diarrhea/constipation alternating." (TR. 82). Based on Dr. Bryan's treatment records and his physical assessment, it is clear Dr. Bryan concluded it was these issues that would require Plaintiff to miss more than three days per month of work and need additional breaks. The ALJ declined giving Dr. Bryan's medical opinion controlling weight as a treating physician because "it is not entirely substantiated by the clinical findings and is inconsistent with the other evidence of record." (TR. 87). Inconsistency with the record is a legitimate reason for discounting a treating physician's opinion. *Watkins*, 350 F.3d at 1300-01; *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (holding that inconsistency with the remainder of the evidence is a "legitimate reason" for an ALJ to assign less than controlling weight to treating physician opinion). However, contrary to the legal guidelines set forth above, the ALJ never specified what portions of the record contradict Dr. Bryan's assessment in this regard, nor in what way it is unsubstantiated by his clinical findings. (TR. 87). The absence of such analysis makes it difficult to review the ALJ's decision, especially since it includes a detailed summarization of Plaintiff's medical history that appears to support Dr. Bryan's conclusions.

---

[1] The record in this case is missing pages 3-4 of Dr. Bryan's assessment. However, the ALJ indicated, and the parties do not dispute, that Dr. Bryan's assessment included a conclusion that Plaintiff would have to take additional unscheduled breaks during an average workday. (TR. 87, 912-915).

In June 2009, Plaintiff was hospitalized after her laboratory results showed she was suffering from low hemoglobin and low hematocrit. (TR. 80, 329-33, 634, 636-46, 656-61). Upon being admitted, Plaintiff underwent a series of examinations and testing, and received blood transfusions. (TR. 80, 329-33, 634, 636-50, 653, 655-61). Plaintiff was ultimately diagnosed with gastritis and gastroduodenitis without hemorrhage, hepatitis B, stomach ulcer, chronic pain, iron deficiency anemia, internal hemorrhoids, gastroduodenal disease, essential thrombocytopenia, esophageal reflux, diverticulosis without hemorrhage, diaphragmatic hernia, bacterial infection due to Helicobacter Pylori ("H. Pylori"), B complex deficiency and anxiety state. (TR. 80, 634, 639, 644, 646, 648-51, 653). From that point forward, the record is replete with varying treatments from numerous physicians, along with consistent reports of symptoms from Plaintiff, related to serious gastrointestinal problems.

In February 2010, Plaintiff was treated by Dr. Durica, an oncologist, on referral for anemia. (TR. 84, 496-98). Dr. Durica noted Plaintiff had likely been iron deficient for several years and that her gastritis had probably allowed her to lose small amounts of blood over a very long period of time. (TR. 498). Dr. Durica prescribed Bifera and iron supplements to take if tolerated. (TR. 498).

In January 2011, Plaintiff was seen by Dr. Steve Arora for a recurrence of anemia and rectal bleeding. (TR. 82, 375). He performed a colonoscopy that showed severe active chronic inflammation, hyalinization of the lamina propria and distortion of the mucosal architecture. (TR. 378). Dr. Arora further found mild diverticulitis of the left

6

colon and severe H. Pylori gastritis. (TR. 375, 378). In July and September 2011, Plaintiff went to the emergency room with severe vomiting, diarrhea and nausea. (TR. 81, 554-56, 562-63). She was treated with IV fluids on both occasions, as well as medication in September. (TR. 556). During her September visit, the treating physicians found Plaintiff suffered from subacute diverticulitis, anemia, gastritis, dehydration, peptic ulcer disease with H. pylori and diarrheal illness. (TR. 81, 554-56, 562-63).

In October 2011, Plaintiff was sent back to Dr. Durica with generalized weakness, fatigue and occasional sweats. (TR. 84, 493-94, 693-95). Dr. Durica noted that Plaintiff was experiencing intermittent rectal bleeding, in spite of Plaintiff's previous hemorrhoid surgery. (TR. 493, 693). Dr. Durica also noted that Plaintiff had required periodic transfusions. (TR. 493, 693). Upon examination and blood work, Dr. Durica found Plaintiff was anemic and that her anemia had actually increased since March 2011. (TR. 494, 694). Dr. Durica further found Plaintiff had a low-grade chronic source of blood loss in her gut but neither she nor Dr. Arora had been able to determine the source. (TR. 494, 694). Plaintiff was unable to tolerate oral iron supplements and Dr. Durica recommended IV iron infusions, though could not guarantee they would be effective. (TR. 494-95, 694-95). Plaintiff received these infusions on October 28, 2011 and November 4, 2011. (TR. 84, 698-99). However, during the second transfusion, she experienced pressure in her chest and felt like she could not breathe. (TR. 698). As a result, they had to stop the infusion, she was provided medication and responded well.

(TR. 691, 698). Her iron level was normal on December 5, 2011 but did not remain so. (TR. 746).

By January 2012, Plaintiff's iron and hemoglobin levels were again low. (TR. 746-47). On February 21, 2012, Dr. Durica recommended another iron infusion, however, Plaintiff was instructed to take Zantac and Benadryl during the days prior to the infusion. (TR. 748). She did well with the first infusion but prior to the second, Plaintiff was hospitalized with an attack of appendicitis. (TR. 85, 818-19). Dr. Durica saw Plaintiff again in June 2012 and received iron infusions on June 8th and June 15th. (TR. 819). In September, Dr. Durica noted Plaintiff was continuing to experience rectal bleeding with black stools, nausea and vomiting, as well as intermittent constipation and diarrhea. (TR. 820). Dr. Durica reiterated that Plaintiff is likely suffering from an ongoing blood loss from an uncertain GI source, in addition to ineffective iron absorption. (TR. 821). Plaintiff expressed concern about her ability to travel to Las Vegas in October for her daughter's wedding and Dr. Durica indicated that she would check her CBC and ferritin level in early October and make arrangements for an iron infusion if Plaintiff's hemoglobin had dropped. (TR. 821).

Plaintiff presented again to the emergency room in April and September 2012 with complaints of nausea and vomiting. (TR. 780-81, 783-84, 834-36). In the midst of this, Plaintiff saw Dr. Bryan for the first time in May 2012. (TR. 942-43). In his records from that visit, Dr. Bryan noted that Plaintiff had been having GI problems for many years, including nausea, diarrhea/constipation alternating, had innumerable trips to the

ER, chronic nausea prevented her from social functions and she was concerned about being able to attend her daughter's wedding. (TR. 943).

In November 2012, Dr. Bryan found Plaintiff had active H. Pylori, vomiting 3-4 days per week and nausea. (TR. 940). In January 2013, Dr. Bryan noted that Plaintiff's gastrointestinal symptoms, including nausea, improved after the most recent H. Pylori treatment but had begun returning. (TR. 937-39). Additionally, Plaintiff's iron was very low and Dr. Bryan recommended starting another over the counter iron supplement and if ineffective, recommended more iron transfusions. (TR. 937-38).

The following month, Dr. Bryan noted that Plaintiff was continuing to experience nausea and vomiting. (TR. 932). Tests showed that Plaintiff was again positive for H. Pylori and was started on treatment for the same. (TR. 932-33).[2] In March 2013, Plaintiff received additional iron infusions. (TR. 898, 900). In April 2013, upon again testing positive for H. Pylori, Dr. Bryan recommended referring Plaintiff to a "GI for assistance" and noted Plaintiff's was a "tough case." (TR. 930).

In deciding to give Dr. Bryan's opinion "little weight," the ALJ stated that his assessment that Plaintiff would be absent from work more than three times a month and would require unscheduled breaks are "unsupported by his own medical reports and the overall evidence of record. The doctor apparently relied quite heavily on the subjective report of the symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what the claimant reported." (TR. 87). A

---

[2] As the ALJ noted, Plaintiff has undergone multiple treatments for H. Pylori and they have been consistently ineffective. (TR. 82).

review of the record, including years of medical treatment from other physicians and hospitals, supports Dr. Bryan's assessment. Similarly, the ALJ's statement that Dr. Bryan relied heavily on Plaintiff's subjective complaints also does not appear to be a legitimate basis for giving Dr. Bryan's opinion less weight. Numerous physicians, including Dr. Bryan, ran various tests and blood work on Plaintiff over several years and their results and findings support the presence of Plaintiff's reported symptoms and subjective complaints. *See McGoffin*, 288 F.3d at 1252 (holding that an ALJ may not reject a treating physician's opinion based only on the ALJ's credibility judgments and lay opinion).

The ALJ also stated that Dr. Bryan's opinion should be given less weight because during his first appointment with Plaintiff, Dr. Bryan noted that a review of her musculoskeletal system was unremarkable and reported no myalgia, muscle weakness or joint pain. (TR. 87). It is wholly unclear to the Court why an unremarkable musculoskeletal examination undermines Dr. Bryan's assessment of Plaintiff's severe gastrointestinal issues. Dr. Bryan's assessment regarding the need to miss work and take unscheduled breaks is not related to musculoskeletal problems. "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

The ALJ failed to adhere to the mandate of the treating physician rule in connection with her decision to give Dr. Bryan's opinion "little weight." If an ALJ rejects

an opinion completely, she must offer specific and legitimate reasons for doing so. *Watkins*, 350 F.3d at 1300–01; SSR 96–2p, 1996 WL 374188, at *4. Even if the ALJ does not completely reject the opinion, she must give "good reasons" for weight ultimately assigned. *Id.* at 1301; 20 C.F.R. § 404.1527(d)(2). The ALJ failed to offer any substantive reasons for her determination but, instead, simply repeated the findings from Dr. Bryan's assessment, a limited portion of his records and then generically concluded that his assessment that Plaintiff would have to miss work and take unscheduled breaks was "not entirely substantiated by the clinical findings," "is inconsistent with the other evidence of record," and is given little weight "where they are not supported by the signs, symptoms and medical findings in the record." (TR. 87). The ALJ did not affirmatively point to any specific findings by Dr. Bryan or other physicians that contradicted and/or failed to support Dr. Bryan's assessment, nor did she offer "good reasons" for the weight given to his opinion. *See Watkins*, 350 F.3d at 1300–01; 20 C.F.R. § 404.1527(d)(2); SSR 96–2p, 1996 WL 374188, at *4. Accordingly, because the ALJ erred by failing to properly evaluate Dr. Bryan's medical opinion as a treating source, remand is required for additional proceedings.

### B. Other Considerations on Remand

Plaintiff's remaining assertions of error need not be addressed, however, the Court will briefly mention the ALJ's analysis of Plaintiff's credibility. In her decision, the ALJ summarized Plaintiff's daily activities as those activities were purportedly reported by Plaintiff. (TR. 86). The Court would caution the ALJ on remand to ensure said

summary is accurate. While "[c]redibility determinations are peculiarly the province of the finder of fact, *see Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990), "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125 (10th Cir. 1988) (footnote omitted).

In the decision, the ALJ states, "[Plaintiff] prepares simple meals, washes dishes, and does some laundry. She drives and can go out alone. She goes shopping in stores one day a week for two to three hours." (TR. 86). However, Plaintiff reported on her Social Security Function Report that she tries to go shopping and do laundry, but often gets nauseous, hot and weak and is unable to finish. (TR. 282). She further reported that her husband, son and grandchildren help with household work and grocery shopping. (TR. 282). This Report is consistent with Plaintiff's testimony at her administrative hearing wherein she discussed in more detail her difficulties in completing any of these tasks, including being transported to the hospital by ambulance on two separate shopping attempts. (TR. 128-30).

Similarly, the ALJ stated that Plaintiff "travelled out of state by car to Las Vegas in October 2012 to attend her daughter's wedding, and traveled to Michigan by car to attend a funeral." (TR. 86). While the relevance of limited car trips is not entirely clear, the Court notes that two different physicians' records include notations regarding concerns about Plaintiff's ability to attend her daughter's wedding because doing so required extensive travel. (TR. 821, 943). Additionally, the ALJ also stated that Plaintiff

12

drove straight through for 16 hours during her trip to Michigan. (TR. 78). This report is inaccurate as Plaintiff specifically testified that she and her husband broke the drive into two days, and did the same for the drive to Las Vegas. (TR. 115-16). While some inconsistencies on Plaintiff's part may indeed exist, care should be taken on remand that any analysis of Plaintiff's credibility is based on an accurate summarization of the record in this matter.

Finally, the ALJ makes a conclusory statement in her decision that Plaintiff "has a criminal record consisting of using an employer's credit card in 2010, that diminishes her credibility. She pled *nolo contendere* and was placed on probation for three years and partial restitution." (TR. 86). Plaintiff discussed this conviction at her administrative hearing. (TR. 117-20, 122). On appeal, Plaintiff contends that the ALJ erred by not "providing any further evidence as to why this fact, standing alone, would discredit [Plaintiff's] testimony." (TR. 86). In response, the Commissioner stated that the Tenth Circuit has not ruled on the issue of whether a claimant's criminal record may be considered when determining a claimant's credibility. (ECF No. 24:10).

The Tenth Circuit has indicated in an unpublished opinion that an ALJ can consider a claimant's criminal record in assessing credibility. In *Bolton v. Barnhart*, 117 F. App'x 80, 85 (10th Cir. 2004), the ALJ, in finding that the plaintiff had diminished credibility, noted that the plaintiff had previously been imprisoned on several felony charges related to writing fraudulent checks. *Id*. Based on this, the ALJ concluded "[t]he fact that [plaintiff] is a convicted felon tends to lessen his credibility, particularly since

13

his crimes demonstrate an ability to perpetrate deceit and dishonesty over an extended period of time." *Id.* (internal quotations omitted). Although the ALJ listed several additional factors as diminishing the claimant's credibility and each of those were discussed in more depth within the *Bolton* decision, the court affirmed the credibility analysis as a whole, including consideration of the plaintiff's criminal history. *Id.* at 85-87.

In light of the ruling herein to reverse and remand the ALJ's decision, it is not necessary to decide whether the ALJ properly considered Plaintiff's 2010 criminal record. However, the Court notes that if an ALJ is going to consider a plaintiff's criminal history, she should at the very least establish how the specific criminal record at issue is relevant to the determination of that plaintiff's credibility.

## CONCLUSION

The decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion. Judgment will be entered accordingly.

**ENTERED** on August 13, 2015.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE